# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

_____

J. HEFFNER,

                                                                                          CV 11-144-M-JCL

                Plaintiff,

    vs.

                                                                         ORDER

BANK OF AMERICA, successor in
interest to COUNTRYWIDE
HOME LOAN; BANK OF AMERICA,
successor by merger to BAC HOME LOANS
SERVICING, LP; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS; AMERICA'S
WHOLESALE LENDER; RECONTRUST
COMPANY, NA; CWALT, INC;
BANK OF NEW YORK; and JOHN DOES 1-50,

                Defendants.

_____

      Plaintiff J. Heffner filed this diversity action to quiet title to his residence located at 511 7th Street, Dayton, Montana 59914 ("the Residence").

      The matter is before the Court on the joint Fed. R. Civ. P. 12(b)(6) motion of Defendants Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("Bank of America"), Countrywide Home Loans, Inc. ("Countrywide") d/b/a America's Wholesale Lender ("America"), Mortgage Electronic Registrations Systems, Inc. ("MERS"), Recontrust Company, N.A.

("Recontrust"), and Bank of New York, as Trustee for CWALT, Inc. ("Bank of New York") (collectively "Defendants") requesting Heffner's complaint be dismissed for failure to state a claim for relief. For the reasons discussed, the motion is granted.

**I. BACKGROUND**

On January 2, 2007, Heffner obtained a mortgage loan for $198,450 from America as evidenced by a promissory note ("Note") executed by Heffner that same day. The loan was secured by a Deed of Trust to the Residence which identifies America as the lender, names Charles J. Peterson as the trustee, and names MERS as the beneficiary. The Deed of Trust also names MERS as the "nominee for the Lender, and Lender's successors and assigns." The Deed of Trust was executed under the Small Tract Financing Act of Montana, Mont. Code Ann. §§ 71-1-301 et seq.

Subsequently, on May 11, 2009, MERS executed a Substitution of Trustee appointing Recontrust as trustee in the place of Charles J. Peterson. And on July 12, 2011, MERS assigned the Deed of Trust to Bank of America.[1] On that same

---

[1] The Assignment document identifies Bank of America as the successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP.

date, Recontrust executed a Notice of Trustee's Sale of the Residence. A second Notice of Trustee's Sale was executed by Recontrust on December 13, 2011.

In response to the first Notice of Trustee's Sale, Heffner commenced this quiet title action. Heffner claims that none of the Defendants — and for that matter no one — have the authority to enforce either the Note or Deed of Trust. As best as can be ascertained from Heffner's disjointed complaint, he offers three theories in support of his claim.

For his first theory, Heffner alleges that Countrywide acquired the Note from the originating lender America, and promptly securitized the Note into a REMIC (Real Estate Mortgage Investment Conduit).[2, 3] From this premise, Heffner asserts that the "real and beneficial interest holders" of the Note are the individual shareholders in REMIC. And it is only those shareholders — not the

---

[2]Securitization generally describes the process of pooling loans and selling shares in the pools to investors on the open market. *See Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, ___ F.3d ___, 2011 WL 6739431, *7 n.2 (10th Cir. 2011) (citation omitted); *see also* Christopher L. Peterson, *Predatory Structured Finance*, 28 Cardozo L. Rev. 2185, 2186 n.1 (2007).

[3]Heffner also alleges the Note may have been securitized into a "common law trust" identified as the "Alternative Loan Trust". For purposes of the present analysis, the specific identity of the pool into which the Note was placed is of no consequence, the Court simply accepts as true Heffner's allegation that the Note was securitized in the fashion alleged by Heffner.

Defendants — who can enforce the Note. But because the Note was placed in default, so the theory goes, the individual shareholders in REMIC received a tax credit when the Note was "written off" resulting in the debt evidenced by the Note being fully discharged. Finally, Heffner alleges that because the debt evidenced by the Note has been discharged, the Deed of Trust is null and void.

For his second theory, Heffner asserts that the ownership of the Note and the Deed of Trust has been split. Consequently, he contends that either the Deed of Trust, or both the Note and the Deed of Trust are unenforceable due to the separate ownership of those documents.

As his third theory, Heffner alleges generally that neither MERS, nor any other Defendant has standing and authority to enforce and foreclose on the Deed of Trust. Therefore, he contends he is entitled to quiet title to the Residence.

Defendants' assert that Heffner's claims should be dismissed because they are based on legal theories that are not cognizable as a matter of law.

## II. APPLICABLE LAW

### A. Fed. R. Civ. P. 12(b)(6) - Motion to Dismiss Standards

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal for failure to

4

state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to Heffner. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

In a Rule 12(b)(6) motion, a court may consider the complaint and only a very few other categories of materials. *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010). A court may consider evidence on which the complaint "'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The court may treat such document as 'part of the complaint, and thus may assume that its contents are

true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id*. (citations omitted).

Here, the Defendants have appended to their moving papers copies of the following documents: (1) Deed of Trust dated January 2, 2007; (2) Substitution of Trustee dated May 11, 2009; (3) Assignment of Deed of Trust dated July 12, 2011; (4) Notice of Trustee's Sale dated July 12, 2011; and (5) Notice of Trustee's Sale dated December 13, 2011. All of these documents are properly considered by the Court because the three prerequisites to their consideration are satisfied.

### B. Application of Montana Law

Jurisdiction over this action is founded upon diversity of citizenship under 28 U.S.C. § 1332(a). Consequently, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

If an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted). In doing so, the court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 939 (9th Cir.

2001) (citation omitted). The court should also rely on other persuasive authorities including treatises and decisions from other jurisdictions, as guidance. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 865 (9th Cir. 1996).

### C. Pro Se Pleadings

Finally, Heffner is proceeding pro se in this action. Therefore, the Court must construe his pleadings liberally, and his allegations, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). In general,

> a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. DISCUSSION

Under Montana law, a quiet title action is authorized for the purpose of determining a person's rights in claiming title to real property as against others' claims to that property. *See* Mont. Code Ann. § 70-28-101. To obtain a decree to quiet title to property involving a mortgage interest, a mortgagor must establish:

7

(1) that the debt has been satisfied, (2) that he has offered to pay the debt; or (3) the debt is unenforceable as a matter of law. *See Montana Valley Land Co. v. Bestul*, 253 P.2d 325, 328 (Mont. 1953).

The legal theories advanced by Heffner are predicated on the assertion that the underlying debt is unenforceable as a matter of law. For the reasons discussed, however, the Court concludes that Heffner's theories as to the unenforceability of the Note lack any legal merit.

### A. Securitization of the Note

Courts have consistently rejected mortgagors' theories asserting that the sale and securitization of a loan invalidates the power of sale authorized in a deed of trust. *Washburn v. Bank of America, N.A.*, 2011 WL 7053617, *5 (D. Idaho 2011) (citing cases). The theory that the securitization of a promissory note renders a deed of trust unenforceable "is frivolous, [and] has no support in the law[.]" *Marty v. Wells Fargo Bank*, 2011 WL 1103405, *7 (E.D. Cal. 2011) (citing cases). Furthermore, the Deed of Trust in this case permits the Note to be sold. Therefore, under the circumstances alleged by Heffner, the securitization of the Note does not affect the enforceability of the Deed of Trust or the power of sale authorized in the Deed of Trust.

### B. Split Ownership of the Note and the Deed of Trust

No cognizable legal theory of recovery supports Heffner's allegations asserting that the Note and the Deed of Trust are unenforceable based on this split-the-note theory, and other courts have uniformly rejected the theory. Even if the various transfers split the Note from the Deed of Trust in this case, it does not follow that "no party has the power to foreclose." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011). The fact that transfers of a promissory note and an associated deed of trust result in different entities holding those interests does not cloud title to the property and does not provide a basis on which to quiet title in the mortgagor. *See Washburn v. Bank of America, N.A.*, 2011 WL 7053617, *5-6 (D. Idaho 2011) (citing cases); and *Hoilien v. OneWest Bank, FSB*, 2012 WL 1379318, *6 (D. Hawaii 2012) (rejecting the "note-splitting" theory and citing *Cervantes*, 656 F.3d at 1044).

### C. MERS and Other Defendants' Authority to Foreclose

Reading Heffner's allegations liberally, his final theory rests on the assertion that America's appointment of MERS as its nominee and as beneficiary in the Deed of Trust runs afoul of Montana's Small Tract Financing Act ("STFA"), thus rendering the Deed of Trust unenforceable by MERS directly, or

9

by any successor trustee named by MERS.[4] Heffner's theory, however, is laid to rest by the prior decisions of this Court.

In *Diehl v. Northwest Trustee Services, Inc. et al.*, this Court held that the STFA does not prohibit a trustee from delegating to an agent the duty to call a foreclosure sale. *Diehl v. Northwest Trustee Services, Inc. et al.*, 2010 WL 2178513, *1-2 (D. Mont., May 27, 2010), affirmed 2011 WL 834140, **1 (9th Cir. March 10, 2011). The rationale underlying the holding was that the Montana Code allows principals to delegate tasks to agents "unless a contrary intention clearly appears." Mont. Code Ann. § 28-10-105. And nothing in the STFA expresses such an intention — a conclusion confirmed by the Montana Supreme Court. *See Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116, 120-121 (Mont. 2007).

The same rationale is controlling here, as recently recognized by United States Magistrate Judge Ostby, with respect to a lender's appointment of MERS as

---

[4]MERS is an electronic database operated by MERSCORP, Inc. and created to track transfers of "beneficial interests" in home loans, and to track changes in loan servicers. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011). The MERS system was created to avoid the cumbersome process of recording multiple transfers of the deed of trust with the county by designating MERS as the nominal record holder of the deed of trust on behalf of the original lender and any subsequent lender, thereby requiring the deed of trust to only be recorded once. *Id*. at 1039.

its nominee in a STFA deed of trust. *See Joseph v. Bank of America Corp., et al.*, Cause Number CV 11-129-BLG-RFC-CSO (D. Mont. Findings and Recommendations dated April 23, 2012). Judge Ostby concluded that in accordance with Montana agency law, a lender may appoint MERS as its agent "cloaked with authority to act on the lender's behalf under the Deed of Trust." *Id*. at 33-34.

It is true, as alleged by Heffner, that the STFA does not permit MERS to be the beneficiary in a trust indenture as the lender's nominee. That is precisely what Judge Ostby concluded in *Joseph* because MERS is not the entity to whom the secured obligation, i.e. the Note, flows. *Joseph*, supra, pp. 26-28; *see also* Mont. Code Ann. § 71-1-304. And I agree with Judge Ostby's conclusion. But, I also conclude — as did Judge Ostby in *Joseph* — that MERS could and did, as America's nominee/agent, assign the beneficial interest in the Deed of Trust to Bank of America.

As in *Joseph*, the Deed of Trust here reflects that America designated MERS as its agent and gave it full authority to act as a nominee for America and its successors and assigns. The Deed of Trust declares that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell

11

the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this [Deed of Trust]."

MERS, in its capacity as the nominee/agent of America signed the Substitution of Trustee on May 11, 2009, appointing Recontrust as the successor trustee as permitted under Mont. Code Ann. § 71-1-306(2). Therefore, Recontrust was duly appointed as the successor trustee.

The operative Notice of Trustee's Sale dated December 13, 2011, was issued by Recontrust in its capacity as the trustee. The Notice reflects that Heffner was in default on the Note due to his failure to make his monthly payments beginning on December 1, 2009, and the Notice set a trustee's sale for April 30, 2012. The Notice was issued as authorized under Montana law at Mont. Code Ann. §§ 71-1-313(3) and 315. Furthermore, Montana law grants the power of sale under a deed of trust to the trustee. Mont. Code Ann. § 71-1-304(2). Consequently, Heffner's allegations and the documents reflect that Recontrust has the present authority to pursue a power of sale. *See Joseph*, at 36.

Based on the foregoing, Heffner's allegations that Defendants lack authority and standing is unsupported, and his allegations establish he is not entitled to obtain quiet title to the Residence.

## IV.  CONCLUSION

For the reasons discussed above, Heffner's allegations fail to state a viable claim for a quiet title action.  At bottom, his allegations fail to establish that the debt he owes is unenforceable.  Furthermore, under the circumstances of this case the Court finds the defects in Heffner's quiet title claim could not be cured by allegations of further facts.  Therefore, IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED, and this action is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Heffner's Motion for Temporary Restraining Order is DENIED on the basis that this action is dismissed.

DATED this 8th day of May, 2012.

    /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge